UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

RONALD S. CRAMER,                    )
                                     )  No. CV-06-0001-AAM
              Plaintiff,             )
                                     )  ORDER GRANTING IN PART
v.                                   )  PLAINTIFF'S MOTION FOR
                                     )  SUMMARY JUDGMENT; REMANDING
JO ANNE B. BARNHART,                 )  CASE TO ALJ
Commissioner of Social               )
Security,                            )
                                     )
              Defendant.             )
                                     )

     BEFORE THE COURT are Plaintiff's Motion for Summary Judgment
(Ct. Rec. 9) and Defendant's Motion for Summary Judgment (Ct. Rec.
11), noted for hearing without oral argument on July 10, 2006 (Ct.
Rec. 8).  Attorney Jeffery Schwab represents Plaintiff; Special
Assistant United States Attorney Leisa A. Wolf represents the
Commissioner of Social Security ("Commissioner").  The Court has
taken these matters under submission without oral argument. After
reviewing the administrative record and the briefs filed by the
parties, the Court DENIES Defendant's Motion for Summary Judgment
(Ct. Rec. 11) and GRANTS IN PART Plaintiff's Motion for Summary
Judgment (Ct. Rec. 9).

///

ORDER GRANTING IN PART PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT;
REMANDING TO ALJ          - 1 -

### JURISDICTION

On December 14, 2001, the Plaintiff filed an application for Disability Insurance Benefits("DIB") claiming a disabling medical condition since July 12, 1992. (Administrative Record ("AR") 81-83). He alleges disability due to degenerative discs in his neck and back with bone spurs in the nerve canals which cause him mobility problems, back pain, headaches, nerve pain in his arms and legs, and severe muscle cramps. (AR 94). After his applications were denied initially and on reconsideration, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). Hearings were held before ALJ Richard Hines on October 9, 2003 (AR 358-404) and March 16, 2004 (AR 405-420), at which Plaintiff appeared with counsel and testified on his own behalf. Also offering testimony at the hearings were medical expert, William Clayton Jr., M.D. and Jill Dempsey, a vocational expert. On December 7, 2004, the ALJ determined Plaintiff was not entitled to disability insurance benefits according to the Social Security Act ("SSA"). (AR 15-27). When the appeals council denied review on September 14, 2005 (AR 6-8), the ALJ's decision became the final decision of the Commissioner, which is appealable to the district court pursuant to 42 U.S.C. § 405(g). Plaintiff filed this action seeking judicial review of the Commissioner's denial of his applications for Disability Insurance Benefits pursuant to 42 U.S.C. § 405(g) on January 3, 2006. (Ct. Rec. 1).

/ /

/ /

/ /

ORDER GRANTING IN PART PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT;
REMANDING TO ALJ              - 2 -

**STATEMENT OF FACTS**

The facts have been presented in the administrative hearing transcript, the ALJ's decision, the briefs of both Plaintiff and the Commissioner and will only be summarized here.

Plaintiff was 45 years old on the date last insured and 51 years old on the date of the ALJ's decision. (AR 81, 16). He has a high school education. (AR 16). He has past relevant work as a carpenter and a bartender. (AR 16). Plaintiff's impairments began with an on the job injury to his low back which was treated in part, with a diskectomy at L5-S1 on May 6, 1988. (AR 194). Plaintiff previously filed a claim for disability benefits on September 25, 1995, which was subsequently denied.[1] Plaintiff's disability insurance lapsed on September 30, 1997.[2] (AR 15).

**SEQUENTIAL EVALUATION PROCESS**

Plaintiff's disability insured status expired on September 30, 1997. In order to be eligible for Social Security Disability Insurance ("SSDI") benefits, plaintiff must establish that he became disabled prior to the expiration of his insured status. 42 U.S.C. § 416(I); 20 C.F.R. § 404.131 (1995).

The Social Security Act (the "Act") defines "disability" as the "inability to engage in any substantial gainful activity by

---

[1]The prior application was not re-opened and is not presently before the Court.

[2]In order to be eligible to receive disability insurance benefits, plaintiff must demonstrate that she has "insured status" within the meaning of the Act. See generally 42 U.S.C. §§ 414, 423(a),(c); 20 C.F.R. §§ 404.101 et seq.; Chapman v. Apfel, 236 F.3d 480, 482 (9th Cir. 2000).

ORDER GRANTING IN PART PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT;
REMANDING TO ALJ          - 3 -

1  reason of any medically determinable physical or mental impairment

2  which can be expected to result in death or which has lasted or can

3  be expected to last for a continuous period of not less than twelve

4  months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The Act also

5  provides that a Plaintiff shall be determined to be under a

6  disability only if any impairments are of such severity that a

7  Plaintiff is not only unable to do previous work but cannot,

8  considering Plaintiff's age, education and work experiences, engage

9  in any other substantial gainful work which exists in the national

10 economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B). Thus, the

11 definition of disability consists of both medical and vocational

12 components. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir.

13 2001).

14     The Commissioner has established a five-step sequential

15 evaluation process for determining whether a person is disabled. 20

16 C.F.R. §§ 404.1520, 416.920. Step one determines if the person is

17 engaged in substantial gainful activities. If so, benefits are

18 denied. 20 C.F.R. §§ 404.1520(a)(4)(I), 416.920(a)(4)(I). If not,

19 the decision maker proceeds to step two, which determines whether

20 Plaintiff has a medically severe impairment or combination of

21 impairments. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).

22     If Plaintiff does not have a severe impairment or combination

23 of impairments, the disability claim is denied. If the impairment

24 is severe, the evaluation proceeds to the third step, which compares

25 Plaintiff's impairment with a number of listed impairments

26 acknowledged by the Commissioner to be so severe as to preclude

27 substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(ii),

28

ORDER GRANTING IN PART PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT;
REMANDING TO ALJ          - 4 -

416.920(a)(4)(ii); 20 C.F.R. § 404 Subpt. P App. 1.   If the impairment meets or equals one of the listed impairments, Plaintiff is conclusively presumed to be disabled.   If the impairment is not one conclusively presumed to be disabling, the evaluation proceeds to the fourth step, which determines whether the impairment prevents Plaintiff from performing work which was performed in the past.   If a Plaintiff is able to perform previous work, that Plaintiff is deemed not disabled.   20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).

At this step, Plaintiff's residual functional capacity ("RFC") assessment is considered.   If Plaintiff cannot perform this work, the fifth and final step in the process determines whether Plaintiff is able to perform other work in the national economy in view of Plaintiff's residual functional capacity, age, education and past work experience.   20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v); *Bowen v. Yuckert*, 482 U.S. 137 (1987).

The initial burden of proof rests upon Plaintiff to establish a *prima facie* case of entitlement to disability benefits.   *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971); *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999).   The initial burden is met once Plaintiff establishes that a physical or mental impairment prevents the performance of previous work.   The burden then shifts, at step five, to the Commissioner to show that (1) Plaintiff can perform other substantial gainful activity and (2) a "significant number of jobs exist in the national economy" which Plaintiff can perform. *Kail v. Heckler*, 722 F.2d 1496, 1498 (9th Cir. 1984).

/ /

ORDER GRANTING IN PART PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT;
REMANDING TO ALJ          - 5 -

## STANDARD OF REVIEW

Congress has provided a limited scope of judicial review of a Commissioner's decision.  42 U.S.C. § 405(g).  A Court must uphold the Commissioner's decision, made through an ALJ, when the determination is not based on legal error and is supported by substantial evidence.  *See Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985); *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999). "The [Commissioner's] determination that a plaintiff is not disabled will be upheld if the findings of fact are supported by substantial evidence." *Delgado v. Heckler*, 722 F.2d 570, 572 (9th Cir. 1983) (*citing* 42 U.S.C. § 405(g)).  Substantial evidence is more than a mere scintilla, *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n. 10 (9th Cir. 1975), but less than a preponderance.  *McAllister v. Sullivan*, 888 F.2d 599, 601-602 (9th Cir. 1989); *Desrosiers v. Secretary of Health and Human Services*, 846 F.2d 573, 576 (9th Cir. 1988).  Substantial evidence "means such evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citations omitted).  "[S]uch inferences and conclusions as the [Commissioner] may reasonably draw from the evidence" will also be upheld.  *Mark v. Celebrezze*, 348 F.2d 289, 293 (9th Cir. 1965).  On review, the Court considers the record as a whole, not just the evidence supporting the decision of the Commissioner.  *Weetman v. Sullivan,* 877 F.2d 20, 22 (9th Cir. 1989) (*quoting Kornock v. Harris*, 648 F.2d 525, 526 (9th Cir. 1980)).

It is the role of the trier of fact, not this Court, to resolve conflicts in evidence.  *Richardson,* 402 U.S. at 400.  If evidence supports more than one rational interpretation, the Court may not

substitute its judgment for that of the Commissioner. *Tackett*, 180 F.3d at 1097; *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984). Nevertheless, a decision supported by substantial evidence will still be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1987). Thus, if there is substantial evidence to support the administrative findings, or if there is conflicting evidence that will support a finding of either disability or nondisability, the finding of the Commissioner is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-1230 (9th Cir. 1987).

### **ALJ'S FINDINGS**

The ALJ found at step one that Plaintiff has not engaged in substantial gainful activity since his alleged date of disability. (AR 26). At step two, the ALJ found that the medical evidence established the Plaintiff suffered from severe degenerative disc disease and status post L5-S1 diskectomy. (AR 26). The ALJ determined at step two that the record evidence of depression and possible fibromyalgia was not sufficient to qualify them as severe impairments. The ALJ then concluded that Plaintiff does not have an impairment or combination of impairments listed in or medically equal to one of the Listings impairments. (AR 26). After finding the Plaintiff's allegations regarding his limitations not totally credible (AR 26) the ALJ found that Plaintiff has the RFC to perform work at the light[3] exertion level, and that he was therefore not

---

[3]Light work involves lifting items weighing up to 20 pounds at a time with frequent lifting or carrying of items

precluded from performing his past relevant work as a bartender. Thus the ALJ concluded Plaintiff was not disabled within the meaning of the Social Security Act. (AR 27).

## ISSUES

Plaintiff contends that the Commissioner erred as a matter of law and that his decision was not supported by substantial evidence. Specifically, he argues that (1) the ALJ erred by concluding his depression was not severe at step two of the sequential evaluation process; (2) the ALJ erred in finding the Plaintiff not credible; (3) the ALJ's residual functional capacity determination was not properly supported.

The Commissioner opposes the Plaintiff's motion and requests the ALJ's decision be affirmed. Ct. Rec. 12.

## DISCUSSION

**A.  Step Two – Severe Impairment**

Pursuant to the SSA's own internal procedures, once a claimant has shown that he suffers from a medically determinable impairment, he next has the burden of proving that these impairments or their symptoms affect his ability to perform basic work activities. Social Security Ruling ("SSR") 96-3p; SSR 96-7p. If he meets this burden, the ALJ *must* find that the impairment is "severe" and move to the next step in the SSA's five-step process. SSR 96-3p (emphasis added).

Plaintiff contends the ALJ erred by finding that his depression

weighing up to 10 pounds. If someone can perform light work, he also can perform sedentary work. See 20 C.F.R. §§ 404.1567(b), 416.967(b) (2004).

ORDER GRANTING IN PART PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT;
REMANDING TO ALJ          - 8 -

was not severe in the second step of the disability analysis.
Substantial evidence supports the finding of the administrative law
judge ("ALJ") at Step 2 that depression was not a severe impairment
as of the date last insured, September 30, 1997. The ALJ based this
conclusion on the limited evidence of treatment for depression and
because the record evidence did not demonstrate depression
"limit[ed] his ability to perform work activities." (AR 23). The
earliest chart note in the record suggesting the Plaintiff suffers
from depression is from the Methow Valley Family Practice note dated
April 16, 1998.[4] (AR 284). In that record, the doctor noted that the
*Plaintiff had described* he was having increasing bouts of
depression; that these episodes used to be 2-4 hours long but they
were now continuous; that the only relief he found was in pot; that
he was crying many times a day and feels worthless; and that his
depression started around L&I injury. Nonetheless, there are no
remarks regarding Depression in any of the earlier records. On
September 15, 1998, *Plaintiff described* that he was still having
trouble with depression and couldn't function due to the stress from
his "back pain, finances and kids, etc." (AR 289). By September
29, 1998, Plaintiff reports that the anti-depressant made him feel
terrible and the he desired to stop taking anti-depressants. (AR
289). There is again an assessment of depression in May 1999 and
evidence the patient went to see a counselor and/or psychiatrist (AR
297). By January 6, 2000, the assessment was that Plaintiff's
"Depression has stabilized. Patient has decided to take himself off
all medications." (AR 237). Similarly, in February 14, 2001, chart

---

[4] The Court notes at AR 282 there is another assessment of depression,
however the chart note is undated.

ORDER GRANTING IN PART PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT;
REMANDING TO ALJ          - 9 -

notes indicate "Depression in remission."  (AR 251).

The medical evidence simply does not evidence the Plaintiff suffered from severe depression.  Not only is it questionable whether he suffered from Depression during the relevant period, none of the records opine that the depression he suffered existed at a severe level, as defined by the social security regulations.  The hearing testimony on the topic of depression was very limited.  (AR 367, 382-383, 389, 390).  There is simply nothing in the record suggesting Plaintiff's depression significantly limited his ability to cope with the rigors of the work environment at any time, let alone on or before September 30, 1997.[5]  The medical and testimonial evidence is simply insufficient to allow, let alone to require, the ALJ to infer the presence of work-related limitations resulting from depression during the relevant period. Disability is not determined by the presence of impairments, but by the effect the impairments have on the individual's ability to perform substantial gainful activity.  The Plaintiff has failed to meet his meet the de minimis Step 2 burden of demonstrating that his mental impairment would have had more than a minimal impact on his ability to work during the relevant period.   The scarcity of such evidence constitutes substantial evidence supporting the ALJ's finding of no severe depression.

**B. Relevant Period of Time**

As stated earlier, in order to be entitled to disability insurance benefits Plaintiff must demonstrate that he became

_____

[5]The Court also notes that even the Plaintiff did not list depression as an illness limiting his ability to work on his application for disability benefits.  (AR 94).

disabled on or before September 30, 1997. Notably, any deterioration in Plaintiff's condition subsequent to that time is irrelevant. *Waters v. Gardner*, 452 F.2d 855, 858 (9th Cir. 1971)(In a case of back injury and disc disease, "[a]ny deterioration in her condition subsequent to [the date of her last coverage] is, of course, irrelevant.").

The record includes evidence dating from before and after the date last insured. Plaintiff complains of the ALJ's "dominant reliance" upon medical evidence extending beyond the date last insured to support the finding of non-disability. However, the Ninth Circuit has explicitly stated that "medical evaluations made after the expiration of a claimant's insured status are relevant to an evaluation of the pre-expiration condition." *Smith v. Bowen,* 849 F.2d 1222, 1225 (9th Cir. 1988), *citing Parsons v. Heckler*, 739 F.2d 1334, 1340 (8th Cir.1984); *Poe v. Harris*, 644 F.2d 721, 723 n. 2 (8th Cir.1981) (in a case of disabling back pain evidence subsequent to last date of eligibility "is pertinent evidence in that it may disclose the severity and continuity of impairments existing before the earning requirement date").

Nevertheless, upon review of the record and specifically the hearing transcript, the Court is troubled by the ALJ's failure to develop the record on Plaintiff's RFC as to the critical date in question, September 30, 1997, Plaintiff's last day of insured status. The ALJ has a duty to develop the record in Social Security cases, even when the claimant is represented by counsel. *DeLorme v. Sullivan*, 924 F.2d 841, 849 (9th Cir. 1991). However, at the hearing, the focus of the ALJ's questions was primarily on Plaintiff's condition *at that time*, which would appear to be of

ORDER GRANTING IN PART PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT;
REMANDING TO ALJ            - 11 -

questionable relevance since his insured status ended six years earlier.   The ALJ should have questioned Plaintiff at the hearing regarding his pain and other subjective complaints as they existed prior to expiration of his insured status.   Moreover, the ALJ's questions and hypotheticals posed to the medical expert and the vocational expert similarly were not specific as to any particular time period, and focused on the Plaintiff's condition today. Though Plaintiff was represented by counsel at the hearing, the Court notes counsel also did not take the opportunity to add to or correct the record.   There is no indication from the hearing transcript record that the ALJ or counsel knew at that time when Plaintiff's insured status expired or indeed the relevance of that date to the inquiry.

The lack of focused attention on the relevant time period also permeates the ALJ's opinion.   Although the ALJ did explain that the period prior to 1997 was the period of time under consideration (AR 15, 25), the ALJ's discussion and analysis of the medical and non-medical evidence makes no distinction at all between pre-date last insured evidence and post-date last insured evidence. In addition, the ALJ's finding addresses both the pre-date last insured period *and* the subsequent period up to the date of the decision.   (AR 27)("The claimant was not under disability as defined in the Social Security Act, *at any time through the date of the decision...*").

This problem results in a significant lack of clarity in the record.   This confusion convinces the Court that this case requires a remand for further consideration and hearing by the ALJ. The only relevant inquiry in this case is whether plaintiff was disabled on or before September 30, 1997.   The failure to explore Plaintiff's work capabilities during the relevant time frame is most problematic

at step four, when the ALJ is assessing the Plaintiff's residual functional capacity ("RFC") and credibility.  Because of the limited amount of contemporaneous objective medical evidence and Plaintiff's claims of intermittent disabling pain, the ALJ had a duty to clarify the record on this issue.

**C. Credibilty**

In a case of this nature, the ALJ's credibility finding is highly crucial to the disability determination.  Whenever an ALJ's disbelief of a claimant's testimony is a critical factor in a decision to deny benefits, the ALJ must make explicit credibility findings. *Rashad v. Sullivan*, 903 F.2d 1229, 1231 (9th Cir. 1990); *Albalos v. Sullivan*, 907 F.2d 871, 874 (9th Cir. 1990) (implicit finding that claimant was not credible is insufficient); *see also Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)(the ALJ must provide clear and convincing reasons for discrediting a Plaintiff's testimony as to severity of symptoms when there is medical evidence of an underlying impairment). If a claimant who alleges disability based on subjective symptoms produces objective medical evidence which could reasonably be expected to produce some level of symptoms and there is no evidence of malingering, an "ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996).  This standard for rejecting Plaintiff's testimony is the most demanding standard required in Social Security cases.  It is the same standard that an ALJ must meet in order to reject the uncontradicted opinion of a treating physician. *See Lester,* 81 F.3d at 830 (9th Cir. 1995).

The Court has carefully reviewed the ALJ's credibility

determination and finds it flawed on several grounds. Notably, because the ALJ failed to inquire regarding any specific time period, the Plaintiff's testimony was largely irrelevant or ambiguous to the immediate question. For example, the ALJ uses the Plaintiff's testimony regarding his daily activities as a basis to reject his contention he was unable to work. The ALJ mentions the Plaintiff's ability to build a house, ride a bike, walk, go hunting, do woodworking, drive and make furniture. Yet it is entirely unclear from the record whether the Plaintiff was engaged in these activities during the relevant period of time, and if he did, to what extent he was able to during that time. Plaintiff's testimony lacks relevant context and this problem taints the ALJ's credibility analysis.

The Court also notes that several of the ALJ's credibility findings were not supported by the record. The ALJ discredited the Plaintiff in part because the Plaintiff testified of problems due to pain in his right hip and knee buckling and the ALJ found "no objective evidence of problems with his hips or knees..." (AR 24). The record however does contain evidence regarding his complaint of shooting pain down his right leg and his right leg "giving out." See AR 335, 248. Furthermore, the ALJ opined that Plaintiff had testified that he is in bed about 14 hours a day due to pain but that the "record shows no objective evidence to support his complaints of pain..." (AR 24). First, the Court can not locate any where in the hearing transcript where Plaintiff specifically testified he is in bed about 14 hours a day. In fact, he said he "has days"-- five or six days a month on average – where he spends more than 20 hours in bed due to pain. (AR 390, 393, 411).

ORDER GRANTING IN PART PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT;
REMANDING TO ALJ            - 14 -

Moreover, the ALJ's conclusion regarding the support in the record is clearly erroneous. There is no dispute that plaintiff underwent lower back surgery and all physicians and chiropractors alike who have treated plaintiff have consistently diagnosed the Plaintiff is degenerative disc disease. Dr. William F. Clayton, Jr., M.D., the expert utilized in this case, specifically testified that immobilization due to muscle spasms "is not inconsistent with the degenerative arthritis that he has." (AR 369). He went on to state that some people experience the kind of pain which results in immobilization lasting for several days. (AR 369). Furthermore, he testified that, "Spasm is usually muscle tightening in response to pain and the cervical radiographic findings show degenerative disc disease, degenerative arthritis, and a person with that certainly can have episodes of pain even severe enough pain that causes muscle spasms which causes more pain." (AR 370). He also admitted "it is true that a certain minority of people who had a technically successful disc surgery continue to have significant pain for whatever reason, and Mr. Cramer may well be in that small minority, so it's not outside the realm of possibility." (AR 414). As confirmed by the medical expert's testimony in this case, Plaintiff has produced more than sufficient objective medical evidence of an underlying impairment which could reasonably be expected to produce some degree of the symptoms his testimony has described, which is the standard here. *Smolen v. Chater*, 80 F.3d 1273, 1281-82 (9th Cir. 1996). Accordingly, the ALJ can reject the claimant's testimony about the severity of symptoms only by offering specific, clear and convincing reasons for doing so. *Id*. The ALJ may not discredit excess pain testimony simply because it is out of proportion to the

ORDER GRANTING IN PART PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT;
REMANDING TO ALJ          - 15 -

medical evidence. *Varney v. Secretary of Health & Human Services*, 859 F.2d 1396, 1398 (9th Cir. 1988).

The ALJ continued analyzing Plaintiff's credibility finding it "noteworthy" that the record "indicates that the claimant stopped his bartending job because he did not like to do it, rather than any reported disability." (AR 24). This conclusion is also not supported by the record. There are at least six references in the record to the Plaintiff's bartending job, each of which suggest he had to quit due to his inability to tolerate standing and his difficulty in mobility. (AR 142, 147, 162, 186, 203, 392). While there is a suggestion in the record he did not like bartending (AR 199), his dislike of the job is not inconsistent with the notion that he had to quit due to pain.

The ALJ also found that Plaintiff's daily activities were inconsistent with his claims he could not do a sedentary job with a sit/stand option as his pain worsens the longer he sits. The ALJ discredits the Plaintiff in part because the ALJ claimed the record showed he was "able to build a 2000 square foot house while on disability..." While the Court was able to locate two records indicating the Plaintiff had worked on the building of a house (AR 216, 298), the ALJ never questioned the Plaintiff about the extent he was able to perform the work. It is also unclear from the record what time period the work took place.

The ALJ also discredited Plaintiff on the basis that he does woodworking on his house. Plaintiff's full testimony was that he is able to do 10 minutes here and there, and once in a while an hour or two. (AR 396). The ALJ also pointed out the Plaintiff had testified he makes furniture 15-20 hours a week, yet Plaintiff's

testimony was actually that on or around *1993* he had attempted a furniture making business and while at that business on a "good week", he would work 15-20 hours a week. (AR 398)  On a "bad week", he would work zero hours and he couldn't remember ever working more than three days in a row, due to the need to rest his back.  (AR 398-399). Plaintiff also testified he that he enjoys going hunting and will walk a little ways from the vehicle and find a place to sit, but that he never goes "without paying for it in pain." (AR 395).

Finally, the ALJ also found it inconsistent that the Plaintiff is able to walk, bike and drive.  Plaintiff testified that *currently* can walk 2- 3 miles, but on a bad day he can hardly walk at all. (AR 392). Plaintiff's testimony was also that his wife does most of the driving, but he usually can drive on average about a half an hour before his "leg kind of gets on fire." (AR 390). Plaintiff testified that biking is part of his physical therapy program which he does for about 25 minutes at a time.  (AR 412).

The Plaintiff has been a carpenter all his life (AR 378), was a construction framer by trade. He loved his work and the outdoors. (AR 388).  Plaintiff did not testify that a substantial part of his day is filled by the described daily activities.  The Plaintiff's ability to engage in these intermittent activities of relatively short duration does not negate the Plaintiff's complaint he is unable to regularly engage in work due to his pain. His ability to perform some daily activities is not clear and convincing evidence that he could perform his past work.

In general, the credibility determination of the ALJ is entitled to great deference.   The ALJ's determination, however, must

be supported by substantial evidence and free of legal error.  The considerations that the Court has held improper certainly affected the ALJ's credibility assessment of Plaintiff and hence the ultimate determination of disability.  Although the Court notes that the ALJ did articulate some other reasons[6] for finding Plaintiff not "fully credible", it is this Court's view that the errors in the ALJ's credibility analysis were not harmless and undermine the validity of the ALJ's ultimate conclusion that Plaintiff's testimony was not fully credible. On remand the ALJ may reconsider the credibility of Plaintiff, and of Plaintiff's testimony about disability, based on permissible grounds.

**C. Step Four Analysis**

To find that the claimant is not disabled at step four, he must be able to perform either (1) the actual functional demands and job duties of a particular past relevant job; or (2) the functional demands and job duties of the occupation as generally required by employers throughout the national economy. *Pinto v. Massanari*, 249 F.3d 840, 844-45 (9th Cir. 2001).  Although the burden of proof is on the claimant at step four, the ALJ still has the duty to make the requisite factual findings to support his conclusion. SSR 82-62 (1982).  The Social Security Regulations require that the ALJ undertake a "function-by-function" analysis of the claimant's capacity to work according to exertional categories.

/ /

---

[6] The ALJ also cited some character evidence noting that certain medical records had suggested symptom magnification and that Plaintiff had a "very strong entitlement type mentality." (AR 24).

ORDER GRANTING IN PART PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT;
REMANDING TO ALJ        - 18 -

The RFC assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions in paragraphs (b), (c), and (d) of 20 C.F.R. 404.1545 and 416.945. *Only after that* may RFC be expressed in terms of the exertional levels of work, sedentary, light medium, heavy, and very heavy. SSR 96-8p.

RFC is defined as the maximum degree to which an individual retains the capacity for *sustained* performance of the physical/mental requirement of jobs. 20 C.F.R. Pt 404, Subpt P, App. 2 §200.00(c). In determining a claimant's physical ability, the regulations instruct to "assess the severity of the [claimant's] impairment(s) and determine [claimant's] residual functional capacity for work activity on a *regular and continuing basis*. 20 C.F.R. § 404.1545(b). The RFC assessment must be based on all of the relevant evidence in the record, including the effects of symptoms that are reasonably attributed to a medically determinable impairment. 20 C.F.R. § 404.1545(a)

The ALJ's RFC analysis falls far short of what the Social Security Regulations and accompanying Rulings require. Specifically, the Court finds the ALJ failed to adequately consider the accounts throughout the medical and nonmedical evidence that the Plaintiff's condition waxes and wanes. Plaintiff testified that he has "good days" where he is able to function and "bad days" where is not able to function. In a situation where a claimant's symptoms wax and wane in its manifestation of disabling symptoms, as is frequently the case in degenerative disc disorder, the ALJ must make a determination that the Plaintiff is capable of maintaining *regular*

*and continuous* employment. Plaintiff does not allege that he suffers from disabling level of pain at all times that prevents him from participating in any activities, nor must he so allege in order to qualify for disability benefits.  The key issue here is whether Plaintiff was able to engage in employment on a regular and continuing basis.

In short, the Court questions whether the Plaintiff is truly capable of returning to his past relevant work as a bartender given his limitations.  Notably, his only experience as a bartender took place in 1992 as part of a vocational training and apparently took place under modified conditions, where he did not have to lift kegs or wash dishes. (AR 392). Yet after just three months, he apparently quit due to the pain he was suffering.

Moreover, because the ALJ did not consider this in assessing Plaintiff's RFC, failed to consider the Plaintiff's testimony or provide adequate reasons for rejecting it, and did not clarify the record as to the relevant time period, he did not propound an adequate hypothetical to the vocational expert.  The ALJ's question to the vocational expert was formulated as follows:

> "If an individual the same age category [SIC], educational
> level and prior relevant work experience of the claimant were
> limited as defined by the doctor which is essentially the light
> work with other limitations, would that person be able to do
> the prior relevant work?"  (AR 417-418).

The ALJ's questioning of the vocational expert was vague.  This does not suffice, because the hypothetical questions submitted to the vocational expert must precisely specify the claimant's impairments. *DeLorme v. Sullivan*, 924 F.2d 841, 850 (9th Cir. 1991); *Hargis v. Sullivan*, 945 F.2d 1482, 1492 (10th Cir. 1991).

## CONCLUSION

The issue here is whether, despite Plaintiff's degenerative disc disorder, Plaintiff had the residual functional capacity to maintain substantial gainful activity during the period for which he is now seeking benefits. If a claimant has a degenerative or ongoing impairment, the relevant inquiry is whether the claimant was actually disabled during the relevant time, not whether a disease existed that ultimately progressed to a disabling condition. As a result of this burden, the Court will remand the case to the ALJ to make RFC findings consistent with the objective medical evidence showing Plaintiff's capacities not at present, but prior to his date last insured of September 30, 1997. The Court recognizes that since Plaintiff has claimed his disability has existed continuously to the present, evidence tending to belie his claim of current disability, may also tend to belie his claim he was disabled at an earlier date. Our decision here does not dictate any given outcome upon remand. It simply assures that the correct legal standards are invoked in reaching a decision based on the facts of this case.

On remand, the ALJ must direct his questioning and analysis to relevant period of time. The ALJ shall also determine whether clear and convincing reasons supported by substantial evidence exist to reject Plaintiff's testimony, and if so, shall specifically identify which testimony is being rejected. Upon undertaking a full and thorough examination of the entire record, the ALJ may very well arrive at the same conclusions. The Court expresses no opinion on the merits of this matter. On remand, the ALJ is free in his discretion to revisit the record and/or take such testimony as he deems appropriate or necessary.

Accordingly, the Court reverses the ALJ's final determination and **REMANDS** this case to the Commissioner for further administrative proceedings, pursuant to the fourth sentence of 42 U.S.C. §§ 405(g).

Defendant's Motion for Summary Judgment (Ct. Rec. 11) is hereby **DENIED**;

Plaintiff's Motion for Summary Judgment (Ct. Rec. 9) is **GRANTED** to the extent that it seeks a reversal of the Commissioner's decision, and **DENIED** to the extent that it seeks an award of benefits.

IT IS SO ORDERED.  The District Court Executive is directed to enter this Order and an Order of Judgment and forward copies to counsel, and **CLOSE** this file.

**DATED** this 1ST day of November, 2006.

                              S/ Alan A. McDonald
                              ALAN A. McDONALD
                      SENIOR UNITED STATES DISTRICT JUDGE